IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PHILIP SHROPSHIRE,**             )
                                   )
       Plaintiff,          )
                                   )
  v.                               )      2:18cv221
                                   )      **Electronic Filing**
**ELISABETH WHEELER, PIVOT**       )
**PHYSICAL THERAPY** formerly known )
as ALLEGHENY CHESAPEAKE,           )
                                   )
                                   )
       Defendants.         )

## **OPINION**

Proceeding *pro se*, plaintiff commenced this action pursuant to the laws governing employment discrimination seeking redress for alleged wrongful termination based on race. On March 26, 2019, plaintiff's original complaint was dismissed for failure to show exhaustion of administrative remedies and failure to state a claim upon which relief can be granted. Plaintiff was granted leave to amend. He filed an amended complaint. In the amended complaint plaintiff has limited the action to a claim brought solely pursuant to 42 U.S.C. § 1981. Presently before the court is defendant's motion to dismiss the amended complaint. For the reasons set forth below, the motion will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially

the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

2

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook procedural shortcomings in pleadings submitted by those who choose to represent themselves. McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain

statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without meaning. Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after Twombly.

Plaintiff's amended complaint advances the following historical facts. Plaintiff is an African American. Amended Complaint (Doc. No. 30) at ¶ 5. Plaintiff was hired by Allegheny Chesapeake in early 2016 "to taxi senior citizens back and forth from the office that was located in the Point Breeze area." Id. at ¶ 8. The assignments often involved transporting injured and often older people, which plaintiff enjoyed doing. Id. Plaintiff did not receive any face-to-face complaints from the clients he transported for defendant. Plaintiff considers himself to be a pretty safe driver. Id.

Plaintiff received a number of forms and books when he started. Id. at ¶ 9. One of these was an employee handbook. Id. It contained a multi-tiered system of discipline applicable to employee infractions. Id. It also contained a section on an electronic process for filing time sheets. Id. Allegheny Chesapeake was bought out by Pivot Physical Therapy and it became plaintiff's employer. Id.

Plaintiff performed about 70 transports or so before his first employee meeting with April Bibars and defendant Elizabeth Wheeler. Id. at ¶¶ 10-11. During this time plaintiff did not receive any warnings about his job performance, hygiene, clothing attire, or being late. From plaintiff's perspective he had not been late for work or an assignment and he had performed his responsibilities without complaint from any client. Id.

4

On May 10, 2016, plaintiff met with Bibars and Wheeler in his first job performance evaluation.  Id. at ¶ 11.  Plaintiff recalls that in this meeting there was some discussion about him being late over two days in February.  Plaintiff admittedly was late for work "no more than five minutes" and does not recall ever being late for an appointment.  Id.  The meeting lasted about 20 minutes.  Plaintiff was never shown an evaluation form, there was no form for him to sign or information for him to review and he was not told about any improvement plans.  Id.

An incident arose on May 31, 2016.  Plaintiff was late for a pick-up.  Id. at ¶ 12.  Just prior to that pick-up plaintiff encountered a client who didn't want to get into the vehicle.  Id. at ¶ 13.  The client said she didn't feel like going for treatment.  Plaintiff persuaded her to get into the car and go to her treatment.  He analogized the situation to the excuses his ailing mother often uses.  Plaintiff's "Statement of Material Facts" (Doc. No. 33) at p. 3, ¶ 8.  This ordeal made plaintiff about 10 minutes off schedule.  Id.

The second incident directly followed the first.  Amended Complaint (Doc. No. 30) at ¶¶ 12-13.  Plaintiff was given the wrong address for the client.  He proceeded to the address and sat outside for about 10 minutes.  The client actually resided several blocks down the street.  Id. at ¶ 12.  After sitting there for 10 minutes or so plaintiff went up and knocked at the door.  He then figured out that he had been given the wrong address.  Plaintiff's "Statement of Material Facts" (Doc. No. 33) at p. 4, ¶ 9.  This in turn made him late.  Id.  Plaintiff went on to complete 5 or so additional pickups that day without incident.  Id. at p. 4, ¶ 11.

Plaintiff returned to the office on May 31, 2016, and advised one of the individuals who does scheduling that he had been given the wrong address.  Id. at p. 4, ¶11.  He believes he received the wrong address from defendant Elizabeth Wheeler or another employee under her supervision.  Amended Complaint (Doc. No. 30) at ¶ 12.  She did this to sabotage plaintiff.  Id.

Plaintiff admittedly does not have evidence to prove this, so he intends to conduct depositions to generate adequate proof on this point. Id.

Plaintiff was fired about a week after May 31, 2016, incident(s). Plaintiff's "Statement of Material Facts" (Doc. No. 33) at p. 4, ¶ 12. He was not consulted about what had occurred on May 31, 2016, by anyone from Pivot Physical Therapy. Id. He believes he was fired because of his race. Amended Complaint (Doc. No. 30) at ¶ 18. He accuses defendant of holding him to a "hypercritical standard not applied to white workers, treating white workers better and holding them to a lesser standard . . . . " Id. Plaintiff does not identify any Caucasian employee who was treated differently under similar circumstances.

Plaintiff also is prepared to establish that defendant's EEOC statement advances a host of pretextual reasons for his termination. Id. These include 1) he was given unattainable goals because he was given the wrong address; 2) he was never made aware of the work deficiencies in his May 10, 2016, performance evaluation other than his tardiness; 3) he did not see, review or sign the evaluation; and 4) he did not receive any complaints from the clients of defendants. Id. at ¶ 18. Plaintiff was never late doing his job; he was never told about wearing a dirty shirt; he was never told he had a hygiene problem and he was never told about any other work performance deficiencies. Id. at ¶ 16. He was never informed of any improvement plans regarding his work. Id. at ¶ 11. Had he been so informed he would have addressed these issues. Id. at 16.

Plaintiff does concede that he understood he was in jeopardy of losing his job as of the May 10, 2016, performance review. Plaintiff's "Statement of Material Facts" (Doc. No. 33) at p. 4, ¶ 13. He had not received any warnings or measures of discipline prior to that time. Id. And plaintiff never received and defendants did not apply the multi-tiered disciplinary policy called

6

for in the employee handbook at any time during plaintiff's employment. Amended Complaint (Doc. No. 30) at ¶ 17.

Plaintiff avers that defendants have engaged in a course of conduct that is pretext for his wrongful termination. This conduct includes: assigning unattainable goals by demanding that he be on time and giving him the wrong address; never being informed about or given an opportunity to complete a work improvement plan; using desk files and an unsigned form to evaluate his work performance and justify his termination; generating complaints about client service when he never directly received a single complaint from a client; faulting him for attempting to file an electronic time sheet when the practice was authorized by the employee handbook; and providing false statements in the underlying administrative proceedings. Amended Complaint (Doc. No. 30) at ¶¶ 18(A) through 18(F).

Plaintiff further points out that the overall rating in his May 10, 2016, work assessment was that he was deemed to be a satisfactory employee. Plaintiff's "Statement of Material Facts" (Doc. No. 33) at p. 4-5, ¶ 15. And it called for the renewal of his contract, not termination. Id.

On March 26, 2019, a Memorandum Order was entered granting defendant's motion to dismiss plaintiff's original complaint. See Memorandum Order of March 26, 2019, (Doc. No. 29). Plaintiff's request for leave to amend likewise was granted. Id. Plaintiff was ordered to "file an amended complaint on or before April 15, 2019, containing short and plain averments of historical facts and workplace-related events which plaintiff intends to use to support his claims for discrimination." Id. Plaintiff placed his amended complaint in the United States Postal Service mail on April 15, 2019. Amended Complaint (Doc. No. 30) at p. 16 – Certificate of Service. The amended complaint was docketed into the record on April 17, 2019.

Defendants move to dismiss the amended complaint for two reasons. First, they maintain that it was not filed by April 15, 2019, and therefore is untimely. Second, they renew their

7

challenge that plaintiff has failed to allege facts sufficient to state a plausible claim upon which relief can be granted.

Plaintiff argues that he mailed his complaint by the requisite due date and the three day rule for service by mail renders his amended complaint timely. Second, plaintiff maintains that his complaint raises numerous areas where discovery will uncover evidence to support his contention that defendants' explanation is pretextual and he was fired because of his race.

Plaintiff's amended complaint was filed late and therefore is untimely. Defendants are entitled to dismissal on this ground.

It is settled in this jurisdiction that the three day extension of a due date by operation of "Rule 6(e) only extends time limits that begin with 'service of notice or other paper upon the party.'" Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 870 (3d Cir. 1994). It does not apply to deadlines that are established by a court order setting a specific date for compliance. Albright v. Virtue, 273 F.3d 564, 571 (3d Cir. 2001) ("Rule 6(e) does not apply to time periods that begin with the filing in court of a judgment or order.") (quoting with approval 1 James Moore et al., MOORE'S FEDERAL PRACTICE § 6.053[3], at 6–35 (3d ed.1998)); accord Kabacinski v. Bostrom Seating, Inc., 98 F. App'x 78, 82 (3d Cir. 2004) ("Rule 6(e) does not apply to deadlines imposed by, or following, a court order.").

Plaintiff was given a clear and unequivocal directive and date for compliance: he was to file his amended complaint on or before April 15, 2019. He chose to draft it and mail it on that date. He fails to advance any basis for excusable neglect or other circumstances that would warrant an extension under Rule 6(b)(1). Consequently, this action will be dismissed for failure to 1) comply with the court's order and 2) timely file an amended complaint.

In the alternative, plaintiff's complaint fails to set forth facts which plausibly show an entitlement to relief on a claim for disparate treatment based on race. In the face of defendant's

8

challenges to plaintiff's failure to exhaust administrative remedies, plaintiff has reduced his claim to a single count of wrongful termination in violation of 42 U.S.C. § 1981.

It is well settled that to establish a claim under Title VII, the Pennsylvania Human Relations Act ("PHRA") or § 1981, a plaintiff must first establish a *prima facie* case of discrimination.[1] Plaintiff's Amended Complaint fails to meet this threshold.

There is no talismanic formula for presenting a prima facie case. Jones v. School District of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) ("the elements of a prima facie case depend on the facts of the particular case"). The relevant inquiry is whether the plaintiff has suffered an adverse employment action under circumstances which raise an inference of unlawful discrimination. Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995). Plaintiff's burden at this step is "minimal" and is viewed as a means of presenting a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. Id.; see also Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).

---

[1] Claims brought pursuant to Title VII and the PHRA generally are governed by and analyzed under the same standards. See Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 318–19 (3d Cir.2008) (applying the same standards of review and analysis to claims of disparate treatment brought pursuant to Title VII and PHRA); Fogleman v. Mercy Hospital, Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently") (citing Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996)); see also Simpson v. Kay Jewelers, 142 F.3d 639, 643–44, n. 4 (3d Cir. 1998) (same); Zezulewicz v. Port Auth. of Allegheny Cnty., 290 F. Supp.2d 583, 601 (W.D. Pa.2003) (noting that discrimination claims brought under the PHRA are analyzed under the same standards as their federal counterparts). Likewise, "the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) (citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999). Thus, cases addressing any of these causes of action where the claim is predicated on race discrimination potentially apply to the current claim being pressed by plaintiff.

In general, a plaintiff may establish a prime facie case by demonstrating that (1) he is a member of a protected class, (2) he is qualified for the position, (3) he suffered an adverse employment action, and (4) the circumstances raise an inference of discrimination, such as where similarly situated individuals outside the protected class were treated more favorably. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002); see also Sheridan v. E. I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en banc), cert. denied, 521 U.S. 1129 (1997) (discussing nature and purpose of prima facie case). The central focus of the inquiry is always whether the employee is being treated less favorably because of a protected trait, such as race. Pivirotto, 191 F.3d at 352 (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977)). In short, the plaintiff must be able to establish facts that are "adequate to create an inference that an employment decision was based on illegal discriminatory criterion." Id. at 355 (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996)); accord Jones, 198 F.3d at 410-11 (same); Goosby v. Johnson & Johnson Med. Inc., 228 F.3d 313, 318-19 (3d Cir. 2000) (same).

Plaintiff has failed to allege facts that set forth a plausible showing that his race was a motivating or substantial factor in the termination decision. He advances a grocery list of discrepancies which he contends show that defendant has given inconsistent explanations for the decision to terminate his employment. Virtually all of these center around his contention that the May 10, 2016, competency evaluation was not reviewed with him, he was not given an improvement plan and he was not afforded the multi-tiered disciplinary process referenced in the employee handbook.

Even assuming that all of the discrepancies and irregularities exist and apply to plaintiff's benefit, the allegations of the amended complaint still fall short of giving rise to an inference that race was at play in the decision to terminate plaintiff's employment. In meeting his threshold

burden of setting forth a prima facie case, a plaintiff must advance facts that raise a sufficient inference that he was fired because of his race. See Dixon v. Women's Christian Alliance Foster Care Agency, 2014 WL 5393541, *4 (E.D. Pa. Sept. 26, 2014) ("As stated, to assert a viable claim under § 1981, Plaintiffs must allege facts showing that they were terminated because of their race, not because of their views of race or because of someone else's race."). He has not done so. And the fact that he was African American and Wheeler was Caucasian does not supply such an inference.

Moreover, each of the grounds which plaintiff advances such as "lying in wait, post hoc rationalizations, using a hypercritical standard not applied to white workers, treating white workers better and holding them to a lesser standard, false information in defendant's EEOC position statement and a whole bunch of 'weaknesses, implausibilities, inconsistencies or contradiction" is either unsupported by any factual basis or simply highlights factual events that do not raise the specter of racial animus. Plaintiff concedes as much in that he admits that he needs discovery to substantiate that any of the alleged irregularities 1) actually were irregularities, and, more importantly, 2) can be linked to his race through a showing of pretext. See Amended Complaint (Doc. No. 30) at ¶¶ 12, 17, 18, 18(A), 18(E); Plaintiff's "Statement of Material Facts" (Doc. No. 33) at p. 1 - ¶ 2, 3 - ¶ 4, 4 - ¶ 9, 5 - ¶ 15. And he seeks to advance his own claims based on generalized stereotyping about how Caucasian workers are treated in the workplace. See Amended Complaint (Doc. No. 30) at ¶¶ 13, 14, 16.

At this juncture plaintiff must advance facts that raise an inference that his race was a causal factor in the termination decision. He cannot advance a claim of "pretext" by merely "showing" that the defendant was wrong or mistaken in its decision. See Fuentes v. Perski, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual

dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). The actual factual allegations of plaintiff's amended complaint, even when augmented by all of his supplemental submissions, fall short of the required showing. In other words, plaintiff's showing of "pretext" based on the actual historical facts plaintiff currently can advance amounts to quarreling with defendants about whether a good or sound decision was made based on the information that was available at the time. See Amended Complaint (Doc. No. 30) at ¶ 16 ("You can't make this stuff up. Not a fact but an observation: Does this look like an intelligent assessment of my strengths and weaknesses by someone who is objectively measuring my abilities?"). Such a showing does not create an inference that race played a part in the decision and it would therefore be inappropriate to permit plaintiff to resort to an approach that permits discovery before a claim has been stated. Consequently, plaintiff's amended complaint will be dismissed in the alternative for failure to state a claim upon which relief can be granted.

For the reasons set forth above, defendants' motion to dismiss plaintiff's amended complaint will be granted. Appropriate orders will follow.

March 17, 2020

                                                      s/David Stewart Cercone
                                                     David Stewart Cercone
                                                     Senior United States District Judge

cc:    Philip Shropshire
       740 Franklin Avenue
       Pittsburgh, PA 15221
       (*Via First Class Mail*)

       Donna M. Glover, Esquire
       Jennifer L. Curry, Esquire

       (*Via CM/ECF Electronic Mail*)